CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHAKA SHAKUR, | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-00825 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| M. BRINEGAR, *et al.*, | ) | Chief United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Shaka Shakur, a Virginia prisoner acting *pro se*, brought this 42 U.S.C. § 1983 lawsuit alleging claims for excessive force and unlawful restraint in connection with his transfer from Green Rock Correctional Center to River North Correctional Center. (Compl., Dkt. No. 1.) Shakur has sued Officers Brinegar, Fender, and Sherwood, Sergeants Crawford and Towler, Lieutenant May, and Warden Anderson. Before the court is defendants' motion for summary judgment. (Dkt. No. 65.) Shakur filed a response to this motion. (Dkt. No. 72.) Also before the court are Shakur's motions for issuance of a subpoena and for an extension of time. (Dkt. Nos. 73, 89.)[1]

For the reasons stated below, defendants' motion for summary judgment will be granted only insofar as Shakur may not recover monetary damages against defendants in their official capacities. The motion for summary judgment will be denied in all other respects. Shakur's motion to issue a subpoena will also be denied, although without prejudice.

---

[1] In his motion for extension, filed on March 2, 2026, Shakur indicates that he has been transferred and asks that "all deadlines be continued or rescheduled." (Dkt. No. 89.) Because Shakur had already responded to the motion for summary judgment and because there are no deadlines at this time, Shakur's motion will be denied as moot.

## I.  BACKGROUND

**A.  Shakur's Complaint and Procedural History**

In his verified complaint, Shakur alleges Eighth Amendment claims for excessive force and unlawful restraint in connection with his transfer from Green Rock Correctional Center to River North Correctional Center on December 21, 2021.  (Compl. ¶ 11, Dkt. No. 1.)  He also alleges that officers damaged his personal television when it was transported and that his television was operational when he left Green Rock but had a cracked screen and did not work when he arrived at River North.  (*Id.*)

Shakur claims that when he was at Green Rock, he was involved in an incident that was a "retaliatory act" from certain officers that resulted in his "emergency transfer" to River North. (*Id.*)  This incident, according to Shakur, involved a false allegation used to punish Shakur for submitting complaints against Sgt. Towler and other employees for unfair treatment.  (*Id.* ¶ 11 n.1.)

When he arrived at RNCC, Sgt. Towler told the receiving officers that Shakur was an informant, a member of the black panthers, a child molester, and that he had assaulted a female officer at Green Rock, to incite emotions and create animosity towards Shakur.  (*Id.* ¶ 12.) Shakur claims these assertions about him are untrue.  At least six officers were present at the sallyport—the officers named in the complaint.  These officers pulled Shakur from the vehicle while he was shackled and handcuffed with a black box connected to a waist chain.  "These restraints obstructed my range of movement, inhibited my mobility and [maneuverability] and prevented any ability to protect or defend myself."  (*Id.*)

The officers were wearing face coverings, but Shakur was able to identify them, including Brinegar, who was "the primary aggressor who repeatedly made threatening and

[derogatory] remarks while instigating the other officers to cause me pain by stepping on the chain connecting my shackles." (*Id.* ¶ 13.) The defendants told Shakur that he was at RNCC now and would "pay for what I have done and learn my lesson." (*Id.*) Meanwhile, the defendants tried to trip Shakur and yanked on his arms and hands so the chains would dig into his flesh. (*Id.*)

Shakur asserts that he was not combative or disrespectful and he never resisted, but the officers berated him and threatened him. (*Id.* ¶ 14.) After walking down a hallway and through doorways for several minutes, defendants stopped and began to physically assault Shakur, telling him he deserved it for being a child molester and for hitting female guards. (*Id.*) The attack stopped, Shakur says, when one of the defendants stated, "we got blood," which is a signal that Shakur required medical attention to be documented. (*Id.*) Shakur claims that he begged for the officers to stop. (*Id.*) He explains that he is a 55-year-old man suffering from a variety of medical ailments "that include previous injuries to my extremities and this assault only sufficed to exasperate those issues." (*Id.*)

According to the complaint, Sgt. Towler was the subject of several complaints, grievances, and a keep-separate request while Shakur was at Green Rock, and Towler was a central factor in the decision to transfer Shakur to River North, so "he should have never been delegated as the transport officer." (*Id.* ¶ 15.) When Shakur arrived at RNCC, Towler started a campaign to enrage the receiving officers and motivated their conduct during their escort. (*Id.*) "Towler made several private comments to Brinegar, Sherwood, Crawford and May prior to their violent removal of me from the van and then he repeatedly asserted the aforementioned slanderous remarks." (*Id.*) Shakur claims that Towler, Brinegar, Sherwood, Fender, Acord,[2]

---

[2] Officer Acord was dismissed from this case because he could not be served. (Dkt. No. 53.)

3

Crawford, and May were all involved in the attack, causing injuries to Shakur's hands, wrists, legs, ankles, left shoulder, face[,] and head. (*Id.* ¶ 16.) "I never once resisted, or became combative, yet these defendants yanked me from the vehicle repeatedly stepped on my leg chains, wrenched my upper extremities to twist the handcuffs and waist chain, rammed my head and body into the walls or doors, punched, kicked and verbally assaulted me which inflicted cruel + unusual punishment upon my person." (*Id.*)

Defendants moved to dismiss the due process claim regarding the damaged television and to dismiss any claims for monetary damages as to defendants in their official capacities. (Dkt. No. 24.) The court granted the motion with respect to the due process claim and denied the motion as to monetary damages. (Dkt. Nos. 55, 56.)[3]

## B. Facts in Support of Motion for Summary Judgment

In support of their motion for summary judgment, defendants have submitted answers to Shakur's first set of interrogatories by defendants Towler, Sherwood, and Brinegar. (Exs. 1–3, Dkt. Nos. 66-1, 66-2, 66-3.)

Defendants deny any excessive use of force. Instead, defendants argue that Shakur caused injuries to himself by banging his head on a door at intake and against the door in the RHU shower. Shakur was frustrated with the transfer from Green Rock to River North. (Ex. 1 at 3, Ex. 2 at 3, Ex. 3 at 3–4.) Officer Towler denies touching Shakur. (Ex. 1 at 3.) Officers Brinegar and Sherwood were the two escorting officers during the incident. (Ex. 3 at 3.)

## C. Shakur's Response to Motion for Summary Judgment and Motion to Issue Subpoena

In his response to the motion for summary judgment, Shakur argues that he needs certain discovery that he has requested to properly respond to the motion, citing Federal Rule of Civil

---

[3] The court denied the motion because defendants' brief referenced people who are not parties to this suit.

Procedure 56(d).  (Dkt. No. 72.)  Shakur also provided a sworn declaration asserting the same argument.  (Dkt. No. 72-1.)

Shakur has also moved to issue a subpoena, although his proposed subpoena is unclear about to whom it is directed.  On the subpoena form itself, it states that it is directed to "Chadwick Dotson, Mr. Brinegar, et. al.," apparently referencing the defendants.  But on the attachment, he specifically says he is directing the subpoena to Dotson, the Director of the Virginia Department of Corrections, and Special Agents Acosta and Craig O'Dere "from the Special Investigations Unit."  (Dkt. Nos. 73, 73-2.)  Defendants appear to interpret the proposed subpoena as requesting documents from them, and they oppose the motion.  (Dkt. No. 75.)

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant."  *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999).  The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in the pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate the existence of specific, material facts that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

5

position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248.

## B. Personal Involvement for Section 1983 Claims

Section 1983 provides a cause of action against a person who, acting under color of state law, violates the constitutional rights of another. *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). A claim under § 1983 requires factual details about each defendant's personal involvement in violation of the plaintiff's rights. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that liability under § 1983 "requires personal involvement").

## B. Eighth Amendment Claims Against Warden Anderson

Of the seven remaining defendants, Warden Anderson is the one defendant who is not alleged by Shakur to have participated in the alleged December 21, 2021, assault. Thus, Anderson argues that Shakur's claims against him must be dismissed because he was not personally involved in the assault. The law is clear that Anderson cannot be vicariously liable for the acts of his employees or subordinates. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

To establish the liability of a supervisor, a plaintiff must show (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to

6

or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Shakur alleges that Anderson was "actively involved in fostering an atmosphere of abuse against minority offenders, approved said conduct and actually authorized the other defendants['] physical assault upon my person." (Compl. ¶ 9.)  Further, he alleges that his injuries are the "result of the angst manifested by Towler and fostered by the warden who invited the ill treatment of new arrivals at RNCC who had a history of [utilizing] our due process rights through the grievance procedure." (Compl. ¶ 20.)  Finally, Shakur alleges that the "defendants have a documented history of this type of excessive force and is supported, and encouraged, by defendant Anderson." (Compl. ¶ 22.)  These allegations, sworn by Shakur to be true under penalty of perjury, are sufficient to create an issue of fact on supervisory liability for Anderson. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (concluding that a verified complaint can defeat a motion for summary judgment); *see also McCormick v. Hall*, No. 7:20-cv-00690, 2022 WL 4109513, at *2 (W.D. Va. Sept. 8, 2022) ("A *pro se* litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge.").

For these reasons, the court finds that Anderson is not entitled to summary judgment on liability.

## C. Eighth Amendment Claims Against Remaining Defendants

The remaining defendants argue that they are entitled to summary judgment because Shakur did not identify the personal actions of each defendant.  Defendant Towler argues that

Shakur failed to demonstrate that he used any force against him, much less excessive force. Similarly, Brinegar argues that he is only accused of instigating the other officers, not of using force. Finally, defendants highlight that Brinegar and Sherwood admit to being the escorting officers, but they deny any use of force.

As to the denial of any use of force by Brinegar and Sherwood, their version of events conflicts with the verified complaint. As noted, Shakur's sworn allegations are sufficient to create an issue of fact. Pertaining to the argument by defendants that Shakur failed to show what specific actions involved excessive use of force, their reading of the verified complaint is impermissibly cabined. Shakur specifically alleges, under penalty of perjury, that "Towler, Brinegar, Sherwood, Fender, Accord Crawford and May were all involved in repeatedly stepping on the chains that connected the leg shackles, twisting and yanking on my hands and arms and the malicious attack previously described which combined to cause the injuries to my hands, wrists, legs, ankles, left shoulder, face[,] and head." (Compl. ¶ 16.) This is sufficient to create an issue of fact that the defendants were personally involved in the alleged use of excessive force.

For these reasons, defendants Brinegar, Fender, Sherwood, Crawford, Towler, and May are not entitled to summary judgment on liability.

### D. Official Capacity Claims for Monetary Damages

Defendants have moved for summary judgment to the extent that Shakur seeks monetary damages against them for actions taken in their official capacities. This aspect of the motion will be granted. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–71 (1989) (holding states and state agencies are immune from § 1983 suits in federal court); *Tilley v. Pierson*, No. 2:25-cv-00259, 2025 WL 3207816 (S.D.W. Va. Nov. 17, 2025) (explaining that the "same immunity

applies to state officials sued in their official capacity for monetary damages, as such suits are treated as actions against the State itself").

**E. Shakur's Motion to Issue Subpoena**

As noted, the subpoena proposed by Shakur purports to be directed to non-defendants Chadwick Dotson, the Director of the Virginia Department of Corrections, and to "Special Agent Acosta and Special Agent Craig O'Dere from the Special Investigation Unit." (Dkt. No. 73-2, at 1.) Defendants respond as if the requests are directed toward them, and at least some of the documents likely would be in defendants' possession, but not the possession of the other named individuals (*e.g.*, defendants' individual tax returns). Because the identities of the subpoena's recipients are irrelevant to the court's analysis, the court will treat the motion as requesting a subpoena directed toward both the named individuals and defendants.[4]

The subpoena seeks the following categories of documents:

(A)     All investigative notes and audio recordings related to the investigation of the incident on December 21, 2021, involving Shakur and defendants, including photographs;

(B)     Summary reports or referrals by the Commonwealth Attorney Office regarding the investigation conducted by Agent Acosta or Agent C. Odere regarding the 12/21/21 incident;

(C)     In the "interest of assessing the Potential for Punitive Damages," tax returns for the previous five years for each defendant;

(D)     Personnel files for each defendant;

(E)     The source and income level for each defendant to assess possible punitive damages;

---

[4] Filed as part of the same docket entry is Shakur's second request for discovery and production of documents directed to defendants. (Dkt. No. 73-2, at 3.) That document seeks some of the same documents, such as documents related to the investigation into the alleged incident. It is unclear whether any of these documents have already been produced.

     (F)     The VDOC Employee Manual that is used to train officers on interacting with prisoners; and

     (G)     All manuals and policies that govern the intake process for prisoners.

(Dkt. No. 73-2.)

Defendants oppose the motion on various grounds.  (Dkt. No. 75.)  First, as it pertains to categories A and B, defendants agree that Shakur is entitled to review audio and visual recordings and investigative reports, but they contend that security concerns prohibit him from possessing them.  Defendants thus represent that Shakur will be allowed to have access to these items, but they move for a protective order to limit Shakur's access to viewing any such recordings and documents, rather than allowing him to possess them in his cell.  Based upon this representation, the court will deny the motion without prejudice as to parts A and B.  Within 14 days of entry of this order, the defendants shall produce documents responsive to parts A and B.  Shakur may view, but not possess, the documents.  He may also take notes regarding the documents and have reasonable access to his notes, but the notes themselves must be maintained by Shakur's counselor or case manager.  The court expects Shakur's access to such materials to be sufficient to allow him to meaningfully review and use them in connection with his case.  If these documents are to be used at trial, defendants may ask to submit either redacted versions or may request that they be filed under seal.

Similarly, under part D, defendants again concede that Shakur may be entitled to *disciplinary* records, but not full employment records, and they move for restrictions limiting Shakur's access to viewing such records but not having a copy in his cell.  The court agrees that disciplinary records of defendants are discoverable.  *See Fielder v. Greenwood*, No. 5:22-ct-3333, 2024 U.S. Dist. LEXIS 74928, at *4–5 (E.D.N.C. Apr. 24, 2024) (concluding that

disciplinary charges involving the alleged use of excessive force were relevant to the plaintiff's claims and should be produced in discovery); *Turner v. Kinder*, No. 7:07-cv-00419, 2008 WL 2078094, at \*2 (W.D. Va. May 15, 2008) (granting a pro se inmate's motion to compel and directing the defendants to produce the requested disciplinary records for in camera review). Based on the defendants' representation that they will voluntarily produce the documents with certain access restrictions, the court will deny this motion without prejudice. Within 14 days of entry of this order, defendants shall produce the disciplinary records of each defendant, except Warden Anderson, subject to the same restrictions and expectations described above as to parts A and B.

Regarding the information relevant to the pursuit of punitive damages, categories C and E, the court finds the requests to be overbroad and unduly burdensome, particularly the request for five years of tax returns. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv); Fed. R. Civ. P. 26(b)(1). Thus, the court will not grant Shakur's motion to issue a subpoena for those documents. Defendants argue that the requests also should be denied because Shakur has not made a prima facie claim for punitive damages. But some courts have held that surviving a motion for summary judgment may be considered an avenue to make such a prima facie showing. *See Stephens v. Mgmt. FC, LLC*, No. 3:24-cv-00698, 2025 WL 1686462, at \*3 (S.D.W. Va. June 16, 2025). On the other hand, Shakur's evidence here—at least as presented to date—is based almost entirely on his own sworn assertions. In any event, given their expansive scope, the court will not require defendants to respond to these requests as drafted. It thus will deny the request for a subpoena for categories C and E without prejudice to Shakur's ability to request a more limited category of documents.

On parts F and G, the court agrees that the requests are overly broad as framed and impose an undue burden, as Shakur has not shown how the entirety of the materials requested are

11

relevant to his claims. Some more limited subset of the manual used "to train officers on interacting with prisoners" might be sufficiently narrow. *Cf. Brooks v. Johnson*, 924 F.3d 104, 122 (4th Cir. 2019) (noting that policies relevant to the use of force "routinely are considered in excessive-force litigation, including litigation that arises in the prison context"). The requests as drafted, however, would encompass a large amount of material, much of it irrelevant to any claim or defense and certainly not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (describing scope of discovery). Thus, the court will deny the request for a subpoena on parts F and G without prejudice. If Shakur wants to reframe his request as a document request asking for a more limited subset of documents, he may do so.

The court will issue an order denying Shakur's motion to issue the subpoena without prejudice.

### III.  CONCLUSION

Based on the foregoing, the court will issue an order granting in part and denying in part defendants' motion for summary judgment, denying without prejudice Shakur's motion for issuance of a subpoena, denying Shakur's motion for an extension, and directing that this matter be set for trial.

Entered: March 30, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge